**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY | : | |
| Plaintiff, | | |
| | | |
| v. | : | |
| | | |
| ROBERT STRAUSS, EMILY STRAUSS, | | |
| EILEEN WALKER, SEAN F. BOGLE, | : | CIVIL ACTION |
| *as Personal Representative of the* | | NO. 16-6223 |
| *Estate of Calvon Asiaya Williams,* | | |
| *Deceased,* SEAN F. BOGLE, *as* | : | |
| *Plenary Guardian of the Person* | | |
| *and Property of C.W. a Minor*; and, | | |
| FOSTER PARENTS OF THE DEVEREUX | : | |
| FOUNDATION | | |
| Defendants. | | |

Jones, II     J.                                                September 20, 2017


## MEMORANDUM

### I.     Introduction

Plaintiff brings the above-captioned action, seeking a declaration that it is not required to defend or indemnify Defendants against the underlying wrongful death suit.[1] Plaintiff amended its original Complaint and Defendants now move to dismiss same for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, Defendant's Motion shall be granted.

### II.     Background

Plaintiff alleges that on February 16, 2015, the Florida Department of Children and Families ("DCF"), at the direction of The Devereux Foundation, Inc. ("Devereux"), placed

---

[1] *Bogle v. Moran et al.*, No. 05-2015-CA-034552 (Fla. Cir. Ct. filed July 15, 2015).

Calvon Asiaya Williams and his identical twin brother C.W., in a foster home in Palm Bay, Florida. (Am. Compl. Ex. A, ¶ 19.) The foster home was owned by Kevin Moran and Julie Moran. (Am. Compl. Ex. A, ¶ 19.) The brothers were ultimately placed with foster parents Emily Strauss (E. Strauss), Robert Strauss (R. Strauss), and Eileen Walker (E. Walker). (Am. Compl. Ex. A, ¶ 21.) On March 8, 2015, Calvon Asiaya Williams and his brother C.W. were swinging on a rope that had "a noose-like loop at the end," outside their home. (Am. Compl. Ex. A, ¶ 27.) While doing so, Calvon's neck became entangled in the loop of the rope, thereby causing his death by asphyxiation. (Am. Compl. Ex. A, ¶¶ 24-26.) The foster parents, due to their "infirmities," were unable to help as C.W. attempted to extricate his brother from the rope and perform CPR on him. (Am. Compl. Ex. A, ¶ 28.)

Sean Bogle, the Personal Representative of the Estate of Calvon Asiaya Williams and the guardian of the Person and Property of C.W., filed suit in Florida state court against E. Strauss, R. Strauss, and E. Walker (among other defendants),[2] alleging wrongful death and negligence against each foster parent (Am. Compl. Ex. A.) After initiation of this action, E. Strauss, R. Strauss, and E. Walker, requested a defense and indemnity from Admiral Insurance Company ("Admiral") against the underlying wrongful death suit, under a policy issued to the "Foster Parents of the Devereux Foundation." (Am. Compl. Ex. D, Bates No. 000192; Am. Compl. Ex. E, Bates No. 000202.) Admiral now seeks a declaratory judgment from this Court, relieving

---

[2] The other named defendants in the Florida suit are Impower, Inc., a Florida not-for-profit corporation, The Devereux Foundation, Inc., a foreign not-for-profit corporation, Community Based Care of Brevard, Inc., a Florida not-for-profit corporation, and Florida Department of Children and Family Services, an agency of the state of Florida. None of these defendants are named in the present suit.

them of the responsibility to defend and indemnify R. Strauss, E. Strauss, and E. Walker. (Am. Compl. ¶ 1.) [3]

### III.     Standard of Review

#### A.     12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Once a defendant has raised this jurisdictional defense, the burden shifts to the plaintiff to present a prima facie case establishing jurisdiction over the non-resident defendants in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); s*ee also Miller Yacht Sales, Inc., v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction."). A plaintiff has the burden to show "with reasonable particularity" enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); s*ee also Action Mfg. Co. v. Simon Wrecking Co.,* 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a prima facie case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. Once the plaintiffs' "allegations are contradicted by an opposing affidavit . . . [they] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings in this manner. Rather, they must counter

---

[3]  Emily Strauss passed away on January 13, 2017. (Defs.' Mot. Dismiss, 3.)

defendants' affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id.* at 559. To that end, "[t]he plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Lionti v. Dipna, Inc.*, Civ. No. 17-1678, 2017 U.S. Dist. LEXIS 98956, at *3-4 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984); *see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*, Civ. No. 14-5536, 2015 U.S. Dist. LEXIS 36569, at *5 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

Personal jurisdiction may be general or specific. To establish personal jurisdiction over a defendant, a court must first apply the relevant state long-arm statute to determine if it may exercise personal jurisdiction; then, the court must determine if that jurisdiction violates the Due Process Clause of the Constitution. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over a non-resident "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b) (2017). The Due Process Clause of the 14th Amendment requires a court to ask, "whether 'the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state.'" *Time Share*, 735 F.2d at 63 (internal citations omitted) (emphasis in original).

General personal jurisdiction exists when a foreign party maintains "continuous and systematic" contacts with a state and may be sued in that state on any claim, whereas specific personal jurisdiction over a defendant exists when a plaintiff's suit is related to or arises out of a defendant's contacts with the state. *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 353 (E.D. Pa. 2010) (internal citations omitted). To establish specific personal jurisdiction, a plaintiff must show the defendant has "'minimum contacts' with the forum." *IMO,* 155 F. 3d at 259 (internal citations omitted). To fulfill this standard, "the defendant must have purposefully directed [its] activities at the forum." *Reassure,* 721 F. Supp. 2d at 353 (internal citations omitted). This standard provides that a defendant will not be subject to a suit resulting from "'random,' 'fortuitous,' or 'attenuated' contacts . . . or . . . the 'unilateral activity of another party'." *Id.* (internal citations omitted). However, personal jurisdiction cannot be avoided simply because "the defendant did not physically enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Once a court finds that a defendant had established minimum contacts with a forum, it must determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945)). To contradict this finding, a defendant must demonstrate that exercising jurisdiction would be "unreasonable" when weighing certain factors.[4] *Reassure,* 721 F. Supp. 2d at 356 (quoting *Burger King,* 471 U.S. at 476-77).

---

[4] These factors are: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Reassure,* 721 F. Supp. 2d at 356 (citations omitted).

## IV.   Discussion

### A.   Plaintiff Has Failed to Make a Prima Facie Showing of Personal Jurisdiction Over Defendants R. Strauss and E. Walker in the Commonwealth of Pennsylvania

Plaintiff has failed to establish personal jurisdiction over the Defendants in Pennsylvania because it fails to allege or demonstrate that Defendants purposefully availed themselves of the forum sufficiently to fulfill the minimum contacts analysis.

Plaintiff contends personal jurisdiction exists because Defendants requested coverage under insurance policies issued to a named insured allegedly domiciled in Pennsylvania and subject to interpretation under Pennsylvania law. In support of this argument, Plaintiff submits that Defendants initiated a contractual relationship with a Pennsylvania domiciled company, and that this contract included Pennsylvania-specific endorsements, subjecting it to interpretation under Pennsylvania law. However, a plaintiff is required to produce evidence that "by entering into [a] contract, [a] particular defendant could foresee impact within Pennsylvania." *Time Share*, 735 F.2d at 65-66. The *Time Share* court held the plaintiff's affidavit "consist[ed] merely of a recitation of unilateral activity on its part, which is insufficient to establish minimum contacts," and that "allegations . . . without factual content will not end the inquiry." *Id.* at 62-63, 65-66. That court further determined a Pennsylvania choice of law provision in the contract was not enough on its own to "vest jurisdiction" over the defendants.  *Id.* at 65-66. For these reasons, it was ultimately concluded that the plaintiff in *Time Share* failed to prove the defendant had minimum contacts with the state. *Id.* at 65-66.

1.      **Plaintiff Fails to Prove Defendants Purposely Availed Themselves of the Forum**

Admiral fails to show Defendants purposely availed themselves of the forum for several reasons: it does not establish the existence and location of the named insured ("Foster Parents of the Devereux Foundation"); it does not show Defendants initiated the insurance contract under which they filed a claim for a defense and indemnity; and, it does not show Defendants otherwise performed actions establishing minimum contacts in Pennsylvania.

Admiral's Amended Complaint alleges that personal jurisdiction over each defendant (R. Strauss, E. Strauss, and E. Walker) is appropriate because they requested a defense and indemnity under policies that were issued to the named insured, "The Foster Parents of the Devereux Foundation."[5] (Am. Compl. ¶ 8.) The Amended Complaint names the "Foster Parents of the Devereux Foundation" as an interested but not necessary party in the litigation, and alleges said entity is a citizen of Pennsylvania with a principal place of business at 2012 Renaissance Blvd., King of Prussia, Pennsylvania. (Am. Compl. ¶ 7.)

In its Brief in Opposition to the instant Motion, Plaintiff similarly claims R. Strauss and E. Walker have minimum contacts with Pennsylvania because they "initiated a contractual relationship . . . when they sought defense and indemnity for the lawsuit." (Pl.'s Br. 12.)  They note, "there is no dispute that the policies were issued to a Pennsylvania entity . . . the 'Foster

---

[5]  Plaintiff's submissions include several different spellings of the name "Devereux," including "Deveraux" (Am. Compl. ¶¶ 7, 10, 20) and "Devereau" (Am. Compl., Ex. B, Bates No. 000104). The proper spelling as indicated in the declaration of Stephen B. Nolan, the Senior Vice President, General Counsel, and Secretary to the Devereux Foundation, is, "the Devereux Foundation d/b/a Devereux Advanced Behavioral Health." (Defs.' Mot. Dismiss, Ex. B, Nolan Decl. ¶¶ 1-2.)

Parents' of the 'Devereux Foundation'";[6] and the insurance contracts listed the insured's address as within Pennsylvania. (Pl.'s Br. 11.) Further, Plaintiff states that "it was [their] *understanding* that the insured was located in Pennsylvania," as reflected on the Policies' Declarations Pages.[7] (Pl.'s Br. 11) (emphasis added). Lastly, based on Plaintiff's aforementioned "understanding," it believed the Policies would be subject to and controlled by Pennsylvania law. (Pl.'s Br. 12.) Thus, because Defendants "deliberately and intentionally initiated" an ongoing contractual relationship in Pennsylvania, Plaintiff concludes they purposely directed their activities to Pennsylvania. (Pl.'s Br. 12-13.) Therefore, it is Admiral's position that they filed the instant lawsuit in response to Defendants' request for coverage "under Pennsylvania based Policies." (Pl.'s Br. 13.)

### a. Plaintiff Fails To Show "Foster Parents of The Devereux Foundation" is a Pennsylvania Entity Capable of Being Sued or Conferring Jurisdiction

The named insured's Pennsylvania residence is the keystone of Plaintiff's argument. Plaintiff argues that because the purported domicile of "Foster Parents of the Devereux Foundation" is Pennsylvania, Defendants' request for coverage under the policies issued to this named insured establishes personal jurisdiction over Defendants in Pennsylvania. (Am. Compl. ¶ 8.)

Despite Plaintiff's repeated allegations that it issued a policy to a Pennsylvania based entity,[8] Plaintiff has not shown through affidavit or other sworn evidence that the named insured is a Pennsylvania entity, or exists within the state. (Pl.'s Br. 2-3, 7, 11, 16.) Contrary to

---

[6] "'Foster Parents' of the 'Devereux Foundation'" is a different construction of the named insured originally used by Plaintiff. In its Amended Complaint, Plaintiff refers to the named insured "Foster Parents of the Devereux Foundation" as one named entity.

[7] *See,* Declarations Pages, Am. Compl. Ex. B, Bates No. 000032; Am. Compl. Ex. C, Bates No. 000112.

[8] *See*, Pl.'s Br. 2-3, 7, 11, 16.

Plaintiff's repeated statements, Defendants sharply refute the location and nature of this entity. In the Nolan Declaration,[9] Mr. Nolan attests that after conducting research, he found no entity named the "Foster Parents of the Devereux Foundation" that is affiliated with Devereux under the laws of Pennsylvania. (Defs.' Mot. Dismiss Ex. B, Nolan Decl. ¶ 4.) He concludes that, "the 'Foster Parents of the Devereux Foundation' is not an entity known to, affiliated with, or sanctioned by Devereux." (Defs.' Mot. Dismiss Ex. B, Nolan Decl. ¶ 5.)

In response to this Declaration, Plaintiff asserts numerous times that the policies were issued to a Pennsylvania entity,[10] and changed the nomenclature of the named insured from the "Foster Parents of the Devereux Foundation," to "the 'Foster Parents' of the 'Devereux Foundation.'" (Pl.'s Br. 11). As recognized in *Time Share*, "allegations . . . without factual content will not end the inquiry" into personal jurisdiction. Thus, Plaintiff's statements that this entity exists in Pennsylvania, without any other proof, will not support a finding of personal jurisdiction. As stated above, in deciding a 12(b)(2) motion, this Court must construe Plaintiff's facts as true. However, courts are free to revisit facts alleged in support of jurisdiction if these facts are disputed. *Aetna*, 129 F. Supp. 3d at 180. The above assertions regarding the location and nature of the "Foster Parents of the Devereux Foundation" are clearly disputed by Defendants and thus are eligible to be reevaluated by the court.

Moreover, based on the standard for a 12(b)(2) motion as set forth above, Plaintiff cannot "repose on their pleadings" to survive this motion. *In re Chocolate Confectionary,* 602 F. Supp. 2d at 538. Instead, when a defendant raises a jurisdictional defense, a plaintiff must counter opposing affidavits with similar proof in the form of "sworn affidavits or other competent

---

[9]  Stephen Nolan, having served as Senior Vice President, General Counsel, and Secretary to Devereux, makes this declaration in his capacity as Secretary to the corporation.

[10]  *See supra* note 7.

evidence." *Metcalfe*, 566 F.3d at 330. Plaintiff herein has not done this. The affidavit Plaintiff produces in response to Defendants' Motion states that it was "Admiral's understanding" that the named insured was located in Pennsylvania. (Pl.'s Br. Ex. 1 Schiavo Aff. ¶ 5.) Plaintiff repeats its assertions that the policies were issued to a Pennsylvania entity, and uses this averment to support a finding of personal jurisdiction. (Pl.'s Br. ¶¶ 3-5.) Admiral also contends that because the address of the named insured appears on the Declarations Pages of the Policies, the entity must necessarily exist at that location.[11] (Pl.'s Br., Ex. A, Bates No. 000032; Pl.'s Br., Ex. B, Bates No. 000112.) These assertions do not constitute facts or evidence to establish the Pennsylvania location of the named insured. *Black's Law Dictionary* defines a "fact" as "something that actually exists; an aspect of reality" or, "an actual or alleged event or circumstance." BLACK'S LAW DICTIONARY (10th ed. 2014). Admiral's "understanding" that an entity exists in a given location is not a fact, nor "competent evidence," that it truly exists in a particular location, but merely a belief. Further, the listed address on the policy does not provide additional proof that an entity capable of being sued exists at the given address. Admiral's affidavit does not provide any factual basis for inferring the existence or location of the "Foster Parents of the Devereux Foundation."

The lack of evidence proving the existence and location of the "Foster Parents of the Devereux Foundation" in Pennsylvania undermines Plaintiff's argument that Defendants, by requesting indemnity and defense under the policies, have established minimum contacts with the forum.

---

[11] There are two relevant Policies in this dispute. Policy #1, EO000006383-08, was issued from 04/01/2014 to 04/01/2015 (Am. Compl. Ex. A). Policy #2 EO000006383-10, was issued from 04/01/2016 to 07/01/2017 (Am. Compl. Ex. B).

### i.       Plaintiff Does Not Prove Defendants' Initiated a Contractual Relationship in the Forum

Putting aside the issue of whether the "Foster Parents of the Devereux Foundation" is a real entity that can support jurisdiction in Pennsylvania, it is still unclear whether R. Strauss and E. Walker initiated a relationship with this entity. Therefore, whether said Defendants purposefully availed themselves of the forum is similarly unclear and Admiral's argument that they did so necessarily fails.

Plaintiff contends specific personal jurisdiction exists in this case because "the Policies were issued to a Pennsylvania entity" and Plaintiff's "R. Strauss and E. Walker have purposely directed their activities to Pennsylvania" by seeking coverage under the Policies.  (Pl.'s Br. 11.) In cases "where a[n] out-of-state resident contracts with a forum resident, whether the out-of-state resident initiated the relationship is crucial." *Penn Mut. Life Ins. Co. v. BNC Nat'l Bank*, Civ. No. 10-00625, 2010 U.S. Dist. LEXIS 91362, at *13 (E.D. Pa. Sep. 2, 2010). When a plaintiff's suit "arises out of a contract between the parties, the courts in this district have held that the defendant's direction of 'at least five letters . . . and one phone call' into Philadelphia to negotiate the contract were sufficient to give rise to jurisdiction over the defendant." *Reassure*, 721 F. Supp. 2d at 356 (internal citations omitted). However, "minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system." *IMO*, 155 F.3d at 268 n.3.

Admiral relies upon *Penn Mutual* to support their argument that Defendants purposefully directed their activities to Pennsylvania. However, the scenario involved therein is clearly distinguishable from that which is presently before this Court.  Plaintiff in *Penn Mutual* filed a declaratory judgment action against BNC National Bank and two individual defendants: Carnago and Shutte. *Id.* at *1-2. Both defendants argued they were not subject to personal jurisdiction as

they were non-residents and never entered Pennsylvania for any purpose related to the litigation. *Id.* at *8, 11. The court held Shutte was subject to its jurisdiction because he specifically selected the Pennsylvania insurance company, subsequently became its agent, and he helped send Carnago's insurance application to the plaintiff's Philadelphia office. *Id.* at *10-11. The court determined Carnago was subject to its jurisdiction because he and the plaintiff initiated a contractual relationship with each other, and he made payments to the plaintiff's Pennsylvania bank. *Id.* at *12-13. In reaching this decision, the court stated that when a defendant reaches "across state lines to enter into a continuing contractual relationship with the resident of another forum[,] that defendant should reasonably anticipate being haled into court there." *Id.* at *14-15.

Similar to the defendants in *Penn,* Admiral argues R. Strauss and E. Walker initiated a contractual relationship when they sought continuing coverage under the Policies, and thus purposefully directed their activities to Pennsylvania.[12] (Pl.'s Br. 12). Specifically, Plaintiff alleges that Defendants "directly and actively solicited an ongoing relationship" with the Pennsylvania based policies, through telephone and electronic communications with Admiral. (Pl.'s Br. 4, 12.)

However, Plaintiff does not show "with reasonable particularity," as in *Mellon Bank*, that Defendants initiated this contract and thus purposefully availed themselves of the forum. Admiral does not allege facts indicating how R. Strauss and E. Walker became insureds under these policies; whether Defendants were original, negotiating parties who initiated the insurance contract, or if they were granted coverage later under the Policies through their positions as foster parents. The record contains evidence that Defendants had communications with Admiral

---

[12]  If true, this would fulfill the first prong of the minimum contacts analysis.

regarding their requests for coverage.[13] (Defs.' Reply Br. 7.) However, unlike the defendants in *Penn*, there are no allegations that Defendants herein specifically selected Admiral (for insurance coverage), established an agency relationship with Admiral, or made premium payments to Pennsylvania or Admiral.[14] It is unclear whether the telephone and email communications from Defendants to Admiral represent the initiation of a contract, or merely a request for contractual performance under the contract. However, it is clear that R. Strauss and E. Walker's contacts with the forum are not coextensive with the defendants in *Penn*, nor are the facts of that case analogous to the present situation. As such, Plaintiff has not fulfilled its burden of showing Defendants actively reached into the forum to initiate this relationship.

### ii. Defendants' Other Contacts With The Forum Do Not Rise to the Level of Minimum Contacts

Outside of the question of contract initiation, Defendants' other actions do not reach the level required to establish minimum contacts with the forum.[15] Again, Plaintiff must provide evidence that Defendants committed "direct actions" that purposefully availed themselves of the forum, as demonstrated in *Time Share*. The 'unilateral activity of another party' is not sufficient to subject non-resident defendants to suit. *Reassure*, 721 F. Supp. 2d at 354 (quoting *Burger King*, 471 U.S. at 475).

The only act any Defendant potentially engaged in, was the request to Admiral for coverage. However, Plaintiff does not prove that either Defendant in this litigation, R. Strauss or E. Walker, personally had direct contact with Admiral, or Pennsylvania, regarding coverage. E.

---

[13] As will be discussed further below, E. Strauss (now deceased) emailed Admiral for coverage under the Policies. (Defs.' Reply Br. 7.)

[14] Rather, Defendants contend Devereux, a non-insured, paid the premiums. (Defs.' Reply Br. 8.)

[15] Defendants are Florida citizens, they have never entered Pennsylvania *for any reason*, nor do they own any kind of property in Pennsylvania. (Defs.' Mot. Dismiss, Ex. C, ¶¶ 7, 9; Ex. D, ¶¶ 7, 9) (emphasis added).

Strauss, now deceased, allegedly contacted Admiral for coverage on behalf of herself and R. Strauss. (Am. Compl. ¶ 43; Defs.' Reply Br. 7.) E. Strauss, it is alleged, also contacted Admiral for coverage on behalf of E. Walker. (Am. Compl. ¶ 44.) Not only are these facts dissimilar to *Penn Mutual* in that a third party performed the contact with the forum, but they show that these two Defendants performed very little—if any—activity toward or within the forum. The "unilateral activity" of other parties toward the forum (E. Strauss and Devereux) does not confer jurisdiction over R. Strauss and E. Walker. As such, Defendants do not have minimum contacts with the state.

> **B.    Plaintiff Failed to Prove Pennsylvania Law Controls Interpretation of the Policies**

Plaintiff further maintains that: because the Policies were issued to a Pennsylvania named insured;[16] Plaintiff understood the insured to be located in Pennsylvania;[17] and, the Policies had Pennsylvania specific endorsements, said Policies would be subject to and controlled by Pennsylvania law[18] and it was reasonable for R. Strauss and E. Walker "to anticipate that they could be 'haled' into a Pennsylvania court." (Pl.'s Br. 5-6, 12-13.)[19]   However, Plaintiff's argument fails because the Pennsylvania specific endorsement (Service of Suit) clause does not equate to a "choice of law" or "forum selection" provision for purposes of conferring jurisdiction over *Defendants* in this matter. Since the Policies at issue do not contain either a "choice of law"

---

[16]   As discussed above, Plaintiff has not established that the "Foster Parents of the Devereux Foundation" is a Pennsylvania entity.

[17]   Plaintiff's "understanding" of the location of an entity is not a fact that the entity exists there.

[18]   Plaintiff's "understanding" that Pennsylvania law would control the Policies is not proof that Pennsylvania law controls the Policies.

[19]   Plaintiff's assertion that the Policies contained "Pennsylvania specific endorsements" is the only allegation that is not an opinion or a belief, but a fact. As such, this section will focus on that assertion.

or "forum selection" provision, Plaintiff's reliance on *Griffith* to show Pennsylvania law controls the interpretation of the Policies is misplaced.

> 1.  **The Service of Suit Clause Does Not Confer Jurisdiction Over Defendants and the Contract Does Not Contain Any Other Choice of Law Provision**

Admiral argues that *Consolidated Sun Ray, Inc. v. Steel Ins. Co.,* 190 F. Supp. 171 (E.D. Pa. 1961),[20] provides support for their claim that the inclusion of a service of suit clause "bolsters the conclusion that the policies should be interpreted under Pennsylvania law." (Pl.'s Br. 7.) The *Consolidated* court held that the clause "was designed to assure the insured that it would not have to travel to the domicile of the defendant to assert its legal rights under the policy." 190 F. Supp. at 174.[21]

"'The service of suit clause itself speaks only to actions brought by the insured.'" *Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671, 675 (D. Del. 2005) (quoting *Int'l Ins. Co. v. McDermott Inc.*, 956 F.2d 93, 95-96 (5th Cir. 1992)). Therefore, in cases such as the one presently before this Court, "the Service of Suit provision does not prescribe the forum for the action." *Ace Capital*, 392 F. Supp. 2d at 675. In this case, "the Service of Suit clause simply has no application." *Id.* (quoting *Int'l Ins.*, 956 F.2d at 95-96).

---

[20]  The court in *Consolidated* concluded that jurisdiction over the defendant insurance company was proper because the language in the service of suit clause indicated that the defendant agreed to submit to the jurisdiction of any court in the United States.

[21]  The language of the Service of Suit clause in *Consolidated* is essentially identical to the Service of Suit clause in the Policies in this case. *See* Am. Compl. Ex. B, Bates No. 000045. In *Consolidated*, the clause states in part, "[i]t is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, Company hereon, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." *Consolidated*, 190 F. Supp. at 173.

Because a Service of Suit clause does not prescribe a forum for an action, it does not constitute a choice of law or forum selection provision. *Id.* Moreover, when a contract does contain such language, a choice of law "provision standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482.

The Pennsylvania specific "Service of Suit" clause Plaintiff relies upon states in part:

> SERVICE OF SUIT – PENNSYLVANIA . . . It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company, at the request of the insured . . . will submit to the jurisdiction of any court of competent jurisdiction within the United States of America . . . and will comply with all requirements necessary to give such court jurisdiction . . . Further, pursuant to any statute of any state . . .the company hereby designates the superintendent, commissioner or Director of Insurance . . .as its true and lawful attorney upon whom may be served any lawful process in any action…instituted by or on behalf of the Insured.

(Am. Compl. Ex. B, Bates No. 000045.)

*Consolidated* is distinguishable from the facts of this case because Plaintiff is the insurance company and Defendants are the insureds. As *Ace Capital* explains, the clause is not applicable under these circumstances. However, assuming *arguendo* the clause is applicable, there is no language therein that confers jurisdiction over Defendants. Plaintiff is the subject of all the requirements contained in this clause. It is required to submit to the jurisdiction of any "court of competent jurisdiction" in the United States, and to "comply with all requirements necessary to give such court jurisdiction." (Am. Compl. Ex. B, Bates No. 000045.) By signing and issuing a contract containing this clause, an inference can be made that Plaintiff agreed to adhere to this provision. Thus, based on the content of the clause and its inapplicability to the present circumstances, Plaintiff's argument that it was reasonable for R. Strauss and E. Walker to anticipate being haled into a Pennsylvania court fails.

Viewing the contract as a whole, the Policies are devoid of any other "choice of law" or "forum selection" provision. Consequently, without language in the contract designating a forum or a specific state's laws for contract disputes, Plaintiff's argument fails to establish that Pennsylvania law controls interpretation of the Policies.

### 2. Plaintiff's *Griffith* Analysis is Misplaced

Plaintiff further argues that even without a choice of law provision, Pennsylvania law should control interpretation of these Policies. Plaintiff uses the *Griffith* approach[22] to say Pennsylvania has the most significant relationship with the Policies because they were issued to a Pennsylvania insured, it was "Admiral's understanding" the insured was located in Pennsylvania, and there are Pennsylvania-specific endorsements in the Policies. (Pl.'s Br. 6.)

Although Plaintiff attempts to rely on the foregoing to establish jurisdiction over Defendants, said reliance does not take into consideration Defendants' direct actions and whether they purposefully availed themselves of the forum. *IMO* explained the minimum contacts analysis requires a plaintiff to "show that the defendant has purposefully directed its activities toward the residents of the forum state." *IMO*, 155, F.3d at 259. In addition, *Reassure* demonstrates a defendant will not be subject to a suit resulting from "'unilateral activity of another party.'" *Reassure,* 721 F. Supp. 2d 353. As previously discussed, Plaintiff has not shown that Defendants initiated or negotiated a contract in Pennsylvania, that they personally filed a

---

[22] Using the *Griffith* analysis, "'the first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states.'" *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 404 (3d Cir. 2016) (internal citations omitted). If a court determines there are no relevant differences between the two states' laws, the court can "refer to the states' laws interchangeably." *Id.* If a court determines there is a conflict, it must also determine "which state has the greater interest in the application of its law." *Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643 (Pa. Super. 2006) (internal citations omitted). Courts must make "a further determination as to which state had the most significant contacts or relationships with the insurance contract" in order to weigh these interests. *Id.*

claim with Admiral under these Policies, or that they otherwise purposefully availed themselves of the forum by requesting indemnity and defense under Policies allegedly controlled by, and subject to, Pennsylvania law. Accordingly, any argument that the Policies should be subject to and controlled by Pennsylvania law does not, on its own, confer jurisdiction over Defendants.

**C.      Exercising Jurisdiction Over These Defendants Would Not Comport With Notions of Fair Play and Substantial Justice**

The final factor of the minimum contacts analysis provides, "once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Reassure*, 721 F. Supp. 2d at 356 (quoting *Burger King,* 471 U.S. at 477). In making this determination, courts consider several factors, including: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King,* 471 U.S. at 477. Nonetheless, because Plaintiff has not fulfilled its burden of demonstrating Defendants' minimum contacts with the forum, an analysis of these factors is not required. *See IMO*, 155 F.3d at 259 ("Although this case raises some interesting issues regarding the application of the 'fair play and substantial justice' standard, we need not reach them since, as we discuss below, [IMO] has not met its burden of demonstrating [Defendant's] minimum contacts with the forum."). However, even assuming Plaintiff had met its burden of demonstrating minimum contacts, it cannot meet its burden regarding fair play and substantial justice. First, the burden on Defendants to defend the suit in Pennsylvania is high, as they do not have minimum contacts with Pennsylvania. Further, they are

Florida citizens, they have never entered Pennsylvania for any reason, nor do they own any kind of property in Pennsylvania. (Defs.' Mot. Dismiss, Ex. C, ¶¶ 7, 9; Ex. D, ¶¶ 7, 9.) Additionally, any witnesses Defendants may call will most likely be located in Florida, as this is where Defendants lived, fostered children, and where the incident giving rise to this suit took place. Defendants would have to incur the expense of bringing these witnesses to Pennsylvania to defend this suit. Plaintiff has not otherwise shown that the burden on these Defendants is such that they could easily travel and defend this suit in Pennsylvania.

Further, Plaintiff argues that because Pennsylvania law controls the Policies' interpretation, Pennsylvania has an interest in adjudicating the dispute. (Pl.'s Br. 13.) However, as discussed above, it is not clear that Pennsylvania law controls the interpretation of these Policies. As such, this argument fails.

Plaintiff's interest in obtaining convenient and effective relief in Pennsylvania is undermined by the Service of Suit clause in the Policies. This provision specifically states that in the event of a lawsuit, Plaintiff "will submit to the jurisdiction of any court of competent jurisdiction within the United States of America." (Am. Compl. Ex. B, Bates No. 000045.) Plaintiff agreed to this clause, consenting to jurisdiction in a myriad of courts. Moreover, Plaintiff is a Delaware corporation, with a principal place of business in New Jersey. (Am. Compl. ¶ 2.) For these reasons, Pennsylvania does not offer a decidedly convenient and effective forum for relief to Plaintiffs.

Lastly, the "interstate judicial system's interest in obtaining the most efficient resolution of controversies" and the "shared interest of the several states in furthering fundamental substantive social policies" would be best served had Admiral simply filed suit in Florida where it is clear personal jurisdiction does exist over Defendants. The Policies in dispute contain a

condition precedent which provides that if Defendants do not maintain a homeowner's policy in the amount of $300,000 or higher, coverage will be void for any insured. (Am. Compl. Ex. B, Bates No. 000108.)[23] Plaintiff alleges that Defendants did not maintain any such policy, thus their coverage is void under these Policies. If Admiral had chosen to file in a Florida court, this litigation would be supremely efficient: jurisdiction over Defendants in Florida is clear and their lack of a homeowners or renters insurance policy to fulfill this condition precedent voids their coverage. Thus, Admiral's choice to file in Pennsylvania has significantly encumbered the resolution of this litigation as well as the underlying litigation brought by Sean Bogle, the Personal Representative of Calvon Asiaya Williams and C.W.

   **D.    Plaintiff Has Failed to Make a Prima Facie Showing of Personal Jurisdiction Over Defendant Sean Bogle in the Commonwealth of Pennsylvania**

Admiral further contends this Court has jurisdiction over Sean Bogle,[24] in his capacity as Personal Representative of the Estate of Calvon Asiaya Williams and as Plenary Guardian of the Person and Property of C.W., because he is pursuing a judgment against R. Strauss and E. Walker, who are seeking coverage from an alleged Pennsylvania citizen ("Foster Parents of the Devereux Foundation"). (Am. Compl. ¶ 9.) Admiral further argues Bogle has intentionally directed his actions to Pennsylvania because he has commenced a lawsuit against R. Strauss and E. Walker, who "initiated a continuing contractual relationship in Pennsylvania,"[25] therefore,

---

[23]  The second policy (AI 08 76 02 03) contains a similar condition precedent and states "the Insured shall obtain and maintain a Homeowners Policy in the amount of $300,000 or higher, or Renters Insurance Policy in the amount of $100,000 or higher." (Am. Compl. Ex. C, Bates No. 000188.)

[24]  Plaintiff has named Sean Bogle is an interested but not necessary party in this litigation. (Am Compl. ¶ 6.)

[25]  As previously referenced, R. Strauss and E. Walker allegedly initiated this contractual relationship when Emily Strauss contacted Admiral on behalf of herself, R. Strauss and E. Walker, seeking insurance coverage for Bogle's claims under a pre-existing policy.

personal jurisdiction over him is appropriate. (Pl.'s Br. 14.) In that same vein, Admiral essentially argues that but for these actions, they would not have had to commence suit in this forum.  (Pl.'s Br. 14.)

Plaintiff's arguments fail because Bogle has not directed any activity toward Pennsylvania. Despite Admiral's assertion that by filing a lawsuit against R. Strauss and E. Walker, Bogle has intentionally directed his actions to Pennsylvania, this does not constitute sufficient contact with the state to establish personal jurisdiction. As discussed above, the minimum contacts test requires a plaintiff show that the defendants, through their direct actions, purposely availed themselves of the forum; unilateral activity by a third party cannot confer jurisdiction over a non-resident defendant.

As a threshold matter, the incident giving rise to the underlying lawsuit occurred in its entirety in Florida. Sean Bogle commenced a wrongful death action against—among other defendants—R. Strauss and E. Walker in Florida state court. (Am. Compl. Ex. A.) In response to this lawsuit, R. Strauss and E. Walker filed a claim with Admiral, requesting a defense and indemnity.[26] These actions do not fulfill the purposeful availment standard for minimum contacts. By initiating a lawsuit in Florida, Bogle has not directed his actions at Pennsylvania. Similarly, R. Strauss and E. Walker's actions, however minimally directed toward Pennsylvania, cannot confer jurisdiction over Bogle. Bogle initiated his claim before R. Strauss and E. Walker contacted Admiral for a defense and initiated any negligible contact of their own with Pennsylvania.[27]  Thus, it cannot be said that Bogle directed his activities at Pennsylvania, and consequently, this Court does not have jurisdiction over him.

---

[26]  *See supra* notes 13, 25.
[27]  *See supra* notes 13, 25.

As Plaintiff has not alleged Bogle committed any other actions toward Pennsylvania or otherwise, Plaintiff has not fulfilled its burden of demonstrating this Defendant's minimum contacts with the forum. Thus, it is not necessary to analyze the "fair play and substantial justice" factors. *IMO*, 155 F.3d at 259. Given the factually thin record regarding Bogle, and the insufficient allegations used to support a finding of jurisdiction, Plaintiff's argument fails.

## IV.    Conclusion

Admiral Insurance Company has failed to prove non-resident Defendants R. Strauss, E. Walker, and Bogle have sufficient contacts with the forum to establish personal jurisdiction over them. There are no factual allegations that R. Strauss or E. Walker sought out an insurance policy, specifically reached out to Admiral Insurance Company, or ever entered Pennsylvania for any reason. If there is a connection between these Defendants and Pennsylvania, it is indirect at best. Even assuming the Policies Admiral issued are subject to Pennsylvania law, this does not increase, strengthen, or otherwise affect R. Strauss and E. Walker's direct contacts with the state, which are insufficient to confer personal jurisdiction.

Bogle's contacts with Pennsylvania are more attenuated than R. Strauss and E. Walker's. Admiral does not allege direct conduct by Bogle to demonstrate his allegedly purposeful availment of the forum. While Admiral argues it is through Bogle's connection with R. Strauss and E. Walker that he establishes minimum contacts with Pennsylvania, in no way did Bogle personally direct any activity toward Pennsylvania. Filing a lawsuit in Florida does not equate to purposeful availment in Pennsylvania. Admiral's reliance on Bogle's contact with R. Strauss and E. Walker—who allegedly had minimum contacts with Pennsylvania—to establish personal jurisdiction, is baseless. This argument is particularly unavailing considering Admiral did not clearly establish personal jurisdiction over R. Strauss and E. Walker in Pennsylvania to begin

with. These factors, in conjunction with this Court's recognition that one purpose of the Due Process Clause is to prevent a plaintiff from using random, fortuitous, and attenuated contacts like these to establish personal jurisdiction over non-resident defendants, Defendants' motion to dismiss shall be granted.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II        J.